**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA

v.

MICHAEL COSCIA,

                    Defendant.

14 CR. 551

Judge Harry D. Leinenweber

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**OMNIBUS MOTION IN LIMINE**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendant Michael Coscia*

October 5, 2015

# **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................1

I.     EVIDENCE RELATED TO REGULATORY INVESTIGATIONS OF
MR. COSCIA'S TRADING ACTIVITY SHOULD BE EXCLUDED. ......................1

       A.     Evidence Of Mr. Coscia's Regulatory Settlements Is Inadmissible
Under Rule 408. ...............................................................................................2

       B.     Even If Admissible Under Rule 408, Evidence Of Mr. Coscia's
Regulatory Settlements Would Be Unfairly Prejudicial. ..................................4

       C.     Evidence Of The Fact Of The Regulatory Investigations Should
Also Be Excluded. ...........................................................................................5

II.    EVIDENCE RELATED TO UNCONNECTED MARKET HARM OR
DISRUPTION SHOULD BE EXCLUDED. ...................................................................5

III.   EVIDENCE RELATED TO EXTERNAL ECONOMIC AND MARKET
EVENTS AND CONCERNS SHOULD BE EXCLUDED. ...........................................6

       A.     Evidence Of External Economic And Market Events And Concerns
Is Not Relevant. ...............................................................................................7

       B.     Even If Relevant, Evidence Of External Economic And Market
Events And Concerns Would Be Unfairly Prejudicial. ....................................7

IV.   EVIDENCE RELATED TO MR. COSCIA'S ECONOMIC
CIRCUMSTANCES SHOULD BE EXCLUDED. ........................................................8

       A.     Evidence Of Mr. Coscia's Economic Circumstances Is Not
Relevant. ..........................................................................................................8

       B.     Even If Relevant, Evidence Of Mr. Coscia's Economic
Circumstances Would Be Unfairly Prejudicial. ...............................................9

V.    REFERENCES TO "MANIPULATION" SHOULD BE EXCLUDED. ....................10

       A.     References To "Manipulation" Are Not Relevant. ..........................................11

       B.     Even If Relevant, References To "Manipulation" Would Be
Unfairly Prejudicial .......................................................................................12

VI.   LAY WITNESS CHARACTERIZATIONS OF MR. COSCIA'S
TRADING ACTIVITY AS "SPOOFING" SHOULD BE EXCLUDED...................13

VII.  CME GROUP OR ICE WITNESS TESTIMONY RELATED TO
COMPLAINTS ABOUT MR. COSCIA'S TRADING ACTIVITY
SHOULD BE EXCLUDED........................................................................................15

VIII.   EVIDENCE RELATING TO TRADING BY MR. COSCIA
UNRELATED TO AND AFTER THAT CHARGED IN THE
INDICTMENT SHOULD BE EXCLUDED..............................................................17

IX.     CERTAIN EVIDENCE IN MR. COSCIA'S CFTC BACKGROUND
QUESTIONNAIRE SHOULD BE EXCLUDED. .....................................................17

CONCLUSION.........................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs.* v. *Sandoz, Inc.*,
743 F. Supp. 2d 762 (N.D. Ill. 2010) ................................................................. 4

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*,
No. 08-cv-7508, 2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013) ..................... 7, 8

*Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Ams.*,
No. 04-cv-10014, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ................ 7, 12

*Broeski* v. *Provident Life & Accident Ins. Co.*,
No. 06-cv-3836, 2007 WL 1704012 (N.D. Ill. June 8, 2007)........................... 3

*Carpenters Health & Welfare Fund* v. *Coca-Cola Co.*,
No. 00-cv-2838, 2008 WL 9358563 (N.D. Ga. Apr. 23, 2008).......................... 5

*Frey* v. *CFTC*,
931 F.2d 1171 (7th Cir. 1991) ........................................................................ 11

*Gage* v. *Metro. Water Reclamation Dist. of Greater Chicago*,
365 F. Supp. 2d 919 (N.D. Ill. 2005) ............................................................... 19

*Highland Capital Mgmt., L.P.* v. *Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008).............................................................. 12

*In re Amaranth Natural Gas Commodities Litig.*,
730 F.3d 170 (2d Cir. 2013).............................................................................. 11

*In re Cenco Inc. Sec. Litig.*,
601 F. Supp. 336 (N.D. Ill. 1984) ...................................................................... 4

*In re Platinum & Palladium Commodities Litig.*,
828 F. Supp. 2d 588 (S.D.N.Y. 2011)............................................................. 4, 5

*Island Intellectual Prop. LLC* v. *Deutsche Bank AG*,
No. 09-cv-2675, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ...................... 7, 8

*Kinsey* v. *Cendant Corp.*,
588 F. Supp. 2d 516 (S.D.N.Y. 2008)................................................................ 8

*Moore* v. *Principi*,
No. 00-cv-2975, 2002 WL 31767802 (N.D. Ill. Dec. 10, 2002)........................ 5

*Old Chief* v. *United States*,
519 U.S. 172 (1997).......................................................................................... 10

*Pucci* v. *Litwin*,
No. 88-cv-10923, 1993 WL 405448 (N.D. Ill. Oct. 4, 1993) ............................................. 10

*Stagman* v. *Ryan*,
176 F.3d 986 (7th Cir. 1999) ............................................. 14

*Strobl* v. *New York Mercantile Exchange*,
768 F.2d 22 (2d Cir. 1985) ............................................. 11

*Tan* v. *City of San Francisco*,
No. 08-cv-1564, 2010 WL 726985 (N.D. Cal. Feb. 26, 2010) ............................................. 19

*Thompson* v. *City of Chicago*,
472 F.3d 444 (7th Cir. 2006) ............................................. 7

*United States ex rel. Tirado* v. *Bombard*,
423 F. Supp. 1245 (S.D.N.Y. 1976) ............................................. 9

*United States* v. *Baskes*,
649 F.2d 471 (7th Cir. 1980) ............................................. 14

*United States* v. *Boone*,
628 F.3d 927 (7th Cir. 2010) ............................................. 17

*United States* v. *Bradley*,
644 F.3d 1213 (11th Cir. 2011) ............................................. 9

*United States* v. *Cassese*,
290 F. Supp. 2d 443 (S.D.N.Y. 2003) ............................................. 9, 10

*United States* v. *Davis*,
No. 09-cr-343, 2009 WL 3646459 (E.D. Pa. Nov. 4, 2009) ............................................. 4

*United States* v. *Espino*,
32 F.3d 253 (7th Cir. 1994) ............................................. 13

*United States* v. *Fuesting*,
845 F.2d 664 (7th Cir. 1988) ............................................. 9

*United States* v. *Gomez*,
763 F.3d 845 (7th Cir. 2014) (en banc) ............................................. 18, 19

*United States* v. *Hays*,
872 F.2d 582 (5th Cir. 1989) ............................................. 3

*United States* v. *Jackson-Randolph*,
282 F.3d 369 (6th Cir. 2002) ............................................. 8, 9

*United States* v. *Locke*,
643 F.3d 235 (7th Cir. 2011) ............................................. 13, 14

*United States* v. *Miller*,
673 F.3d 688 (7th Cir. 2012) ........................................................................ 19

*United States* v. *Noel*,
581 F.3d 490 (7th Cir. 2009) ........................................................................ 13

*United States* v. *Quattrone*,
441 F.3d 153 (2d Cir. 2006) .......................................................................... 10

*United States* v. *Roti*,
484 F.3d 934 (7th Cir. 2007) .......................................................................... 2

*United States* v. *Santos*,
201 F.3d 953 (7th Cir. 2000) ........................................................................ 16

*United States* v. *Socony-Vacuum Oil Co.*,
310 U.S. 150 (1940) ...................................................................................... 10

*United States* v. *Stahl*,
616 F.2d 30 (2d Cir. 1980) .............................................................................. 8

*United States* v. *Whiting*,
471 F.3d 792 (7th Cir. 2006) ........................................................................... 9

*Van Bumble* v. *Wal-Mart Stores, Inc.*,
407 F.3d 823 (7th Cir. 2005) ..................................................................... 9, 10

*Visser* v. *Packer Eng'g Assocs., Inc.*,
924 F.2d 655 (7th Cir. 1991) ......................................................................... 14

*Wielgus* v. *Ryobi Techs., Inc.*,
No. 08-cv-1597, 2012 WL 1853090 (N.D. Ill. May 21, 2012) .................. 9, 10

*Williams* v. *Chevron U.S.A., Inc.*,
875 F.2d 501 (5th Cir. 1989) ........................................................................... 4

*Winchester Packaging, Inc.* v. *Mobil Chem. Co.*,
14 F.3d 316 (7th Cir. 1994) ............................................................................. 3

*Zurich Am. Ins. Co.* v. *Watts Indus., Inc.*,
417 F.3d 682 (7th Cir. 2005) ........................................................................... 3

**Statutes**

7 U.S.C. § 9(1) ............................................................................................... 11

7 U.S.C. § 13(a)(2) ......................................................................................... 11

7 U.S.C. § 13(a)(5) ......................................................................................... 11

**Other Authorities**

76 Fed. Reg. 41,398 (2011) ........................................................................... 11

78 Fed. Reg. 31,890 (2013) ........................................................................... 12

Fed. R. Crim. P. 49.1 .................................................................................... 19

Fed. R. Evid. 403 ..................................................................................... 4, 19

Fed. R. Evid. 404 ............................................................................... 17, 18, 19

Fed. R. Evid. 408 ........................................................................... 1, 2, 3, 4, 5

Fed. R. Evid. 602 .......................................................................................... 14

Fed. R. Evid. 608 .......................................................................................... 19

Fed. R. Evid. 701 ............................................................................... 13, 14, 15

Fed. R. Evid. 801 .......................................................................................... 16

Fed. R. Evid. 803 ...................................................................................... 4, 5

Defendant Michael Coscia respectfully submits this Memorandum of Law in support of his Omnibus Motion In Limine to exclude evidence, testimony, and/or argument as to the following:

(1)   Regulatory investigations related to the subject matter of this case and Mr. Coscia's settlement of them;

(2)   Alleged market harm or disruption that is unconnected to the trading activity of Mr. Coscia that is charged in the Indictment;

(3)   External economic and market events;

(4)   Mr. Coscia's economic circumstances;

(5)   Any reference to "manipulation";

(6)   Lay witness characterizations of Mr. Coscia's conduct as "spoofing";

(7)   Complaints by non-testifying market participants as to Mr. Coscia's trading activity;

(8)   Trading by Mr. Coscia unrelated to and after that charged in the Indictment; and

(9)   Certain information contained in a questionnaire completed by Mr. Coscia in connection with providing testimony to the CFTC.

As explained below, these matters are not relevant to any issue in this case, present a substantial risk of unfair prejudice to Mr. Coscia, or are otherwise barred by the Federal Rules of Evidence.

## ARGUMENT

## I.   EVIDENCE RELATED TO REGULATORY INVESTIGATIONS OF MR. COSCIA'S TRADING ACTIVITY SHOULD BE EXCLUDED.

The Court should preclude the Government from referring to, offering evidence of, or making arguments relating to the regulatory investigations of the same trading conduct alleged in the Indictment, including Mr. Coscia's settlement of them.  Such evidence is expressly prohibited by the bar on compromise evidence of Federal Rule of Evidence 408(a)(1), irrelevant, and/or unfairly prejudicial.

Before he was charged in this matter, Mr. Coscia and his company, Panther Energy Trading, LLC, were subject to investigations by the U.K. Financial Conduct Authority, the CME Group, and the CFTC for the same trading conduct alleged in the Indictment. In July 2013, Mr. Coscia settled these investigations, agreeing to pay fines and to cease certain trading for a limited period. *See* FCA, Final Notice (July 3, 2013) ("FCA Settlement"); CME Group, Notice of Disciplinary Action (July 22, 2013) ("CME Group Settlement"); CFTC, Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions (July 22, 2013) ("CFTC Settlement").

In entering into these settlements, Mr. Coscia did not admit any facts, legal violations, or wrongdoing. Indeed, he explicitly neither admitted nor denied the violations alleged by the CME Group and the CFTC in his settlements with them. CME Group Settlement; CFTC Settlement 1. Mr. Coscia's settlement with the CFTC, moreover, made clear that he did not consent "to the use of the Offer [of Settlement] or [the resulting] Order, or the findings or conclusions in [the] Order consented to in the Offer, by any other party in any other proceeding." CFTC Settlement 1 n.1.

### A. Evidence Of Mr. Coscia's Regulatory Settlements Is Inadmissible Under Rule 408.

Under Rule 408(a)(1), evidence of "furnishing . . . a valuable consideration in compromising . . . [a] claim" is not admissible to "prove or disprove the validity . . . of a disputed claim." Rule 408(a)(1) applies in both civil and criminal proceedings. *United States v. Roti*, 484 F.3d 934, 936-37 (7th Cir. 2007). The rule encourages compromise and settlement of disputes and recognizes that such compromise and settlement is not relevant to assessing a defendant's culpability in subsequent civil or criminal proceedings. *See, e.g.*, Fed. R. Evid. 408 advisory committee's note ("[U]nlike a direct statement of fault, an offer or acceptance of a compromise is not very probative of the defendant's guilt. Moreover, admitting such an offer

or acceptance could deter a defendant from settling a civil regulatory action, for fear of evidentiary use in a subsequent criminal action."); *Zurich Am. Ins. Co.* v. *Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005) ("[T]he law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution.").

Although not probative of a defendant's guilt, evidence of a compromise or settlement is easily misconstrued by a jury. "[A]s the framers of Rule 408 clearly contemplated, the potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound." *United States* v. *Hays*, 872 F.2d 582, 589 (5th Cir. 1989). For "[i]t does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendant[] had done nothing wrong, [he] would not have paid" the settlement amount. *Id.*; *see also, e.g.*, *Winchester Packaging, Inc.* v. *Mobil Chem. Co.*, 14 F.3d 316, 320 (7th Cir. 1994) ("although parties typically are willing to settle for less than they would demand at trial, in order to avoid the expenses and uncertainty of a full-blown litigation, this strategy might be difficult to make credible to a jury"). The rule therefore plainly bars admission of evidence of settlements like the ones Mr. Coscia entered into.

The only conceivable reason the Government might seek to bring these settlements to the attention of the jury is to invite the forbidden inference that Mr. Coscia has somehow acknowledged wrongdoing in connection with his trading activity. But "[a] settlement agreement is not an adjudication (or even evidence of) misconduct," *Broeski* v. *Provident Life & Accident Ins. Co.*, No. 06-cv-3836, 2007 WL 1704012, at *3 (N.D. Ill. June 8, 2007), and such use of a settlement agreement is precisely what Rule 408(a)(1) prohibits. Evidence as to the fact and terms of Mr. Coscia's regulatory settlements should thus be excluded.

**B.** **Even If Admissible Under Rule 408, Evidence Of Mr. Coscia's Regulatory Settlements Would Be Unfairly Prejudicial.**

To the extent that the Government seeks to offer evidence of Mr. Coscia's regulatory settlements for a purported purpose other than to prove or raise inferences about his culpability, such evidence should be excluded because its probative value is substantially outweighed by the risk of unfair prejudice to Mr. Coscia. That Mr. Coscia settled regulatory investigations of the same trading conduct charged in the Indictment is so unfairly prejudicial that it should not be admitted for any purpose. His settlement could easily mislead the jury into believing that Mr. Coscia accepted and admitted the impropriety of his trading strategy. In other words, there is a significant danger that the jury would "view the agreement[s] as a confession of . . . guilt, regardless of the purpose for which the evidence is received." *United States* v. *Davis*, No. 09-cr-343, 2009 WL 3646459, at *5 (E.D. Pa. Nov. 4, 2009) (excluding evidence relating to settlement agreement under Rule 403). *See also, e.g.*, *Williams* v. *Chevron U.S.A., Inc.*, 875 F.2d 501, 504 (5th Cir. 1989) (affirming under Rule 403 district court's exclusion of settlement evidence because "it is undoubtedly possible that the jury would have confused its purpose for that precluded by Rule 408"); *Abbott Labs.* v. *Sandoz, Inc.*, 743 F. Supp. 2d 762, 767 (N.D. Ill. 2010) ("[G]iven the marginal relevance of the settlement agreements, their probative value is outweighed by the danger of unfair prejudice under Rule 403."). Accordingly, the fact and terms of Mr. Coscia's settlements should be excluded as substantially more unfairly prejudicial than probative.[1]

---

[1] Mr. Coscia's regulatory settlements are also plainly inadmissible hearsay. The Court should reject any reliance by the Government on the Federal Rule of Evidence 803(8)(A)(iii) hearsay exception for "[a] record or statement of a public office" that "sets out . . . factual findings from a legally authorized investigation." First, Mr. Coscia's settlement with the CME Group does not fall under this exception because the CME Group is not a "public office." It is a shareholder-owned, publicly-traded, for-profit corporation. *See, e.g.*, CME Group Inc., Annual Report (Form 10-K), at 5 (Feb. 26, 2015). Second, Mr. Coscia's settlements with all three entities fall outside Rule 803(8)'s ambit because they do not set out "factual findings from a legally authorized investigation." The settlements were "not based on formal findings . . . following a hearing on the record." *In re Cenco Inc. Sec. Litig.*, 601 F. Supp. 336, 337 n.3 (N.D. Ill. 1984). Rather, they "recite[] only unproven allegations" that Mr. Coscia neither

### C. Evidence Of The Fact Of The Regulatory Investigations Should Also Be Excluded.

The Court should also exclude and prohibit any mention of the fact of the regulatory investigations that Mr. Coscia settled. That the FCA, CME Group, and CFTC conducted investigations of the trading activity at issue here has no probative value; the fact of the investigations proves nothing and has no bearing on any element of the Government's commodities fraud and spoofing charges.

Indeed, the only reason the Government might offer such evidence is to invite the jury to infer improperly that the mere fact that investigations were conducted tends to establish the wrongfulness of the trading activity. That would "unfairly prejudice the jury by giving the appearance that the ultimate issues to be decided by it had already been decided by another entity." *Moore* v. *Principi*, No. 00-cv-2975, 2002 WL 31767802, at *8 (N.D. Ill. Dec. 10, 2002) (excluding as unfairly prejudicial evidence of an agency's prior investigation). The Court should therefore exclude this evidence.[2]

## II. EVIDENCE RELATED TO UNCONNECTED MARKET HARM OR DISRUPTION SHOULD BE EXCLUDED.

The Court should preclude the Government from offering at trial evidence of or making arguments relating to alleged harm or disruption, either to particular counterparties or to the futures markets, that is not directly linked to the trading activity of Mr. Coscia that is

---

admitted nor denied. *Id.* As such, Mr. Coscia's regulatory settlements do not contain the type of formal, adjudicated "factual findings" that warrant application of the public records exception. *See In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) (prohibiting plaintiffs from relying on a CFTC order to plead the "underlying facts of liability" because "[a]lthough the CFTC Order included certain factual findings, it nevertheless was the product of a settlement . . . , not an adjudication of the underlying issues") (citation omitted). Third, the public records exception "is not a back door vehicle for the introduction of evidence which is otherwise inadmissible." *Carpenters Health & Welfare Fund* v. *Coca-Cola Co.*, No. 00-cv-2838, 2008 WL 9358563, at *4 (N.D. Ga. Apr. 23, 2008). Rule 803(8) "merely creates an exception to the normal hearsay rules excluding out of court statements offered for the truth"; it "does not provide an independent basis for admissibility." *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d at 594, 595 (Rule 803(8) inapplicable where "admissibility is governed by Rule 408, which . . . excludes Plaintiffs' intended use").

[2] At trial, the parties should be required to refer to any prior interviews or testimony from the regulatory investigations as "prior interviews [or testimony] related to this matter."

charged in the Indictment. Absent a direct connection between any alleged harm or disruption and the charged trading activity, such evidence is both irrelevant and unfairly prejudicial.

Materials produced in discovery suggest that the Government may offer evidence from market participants who purportedly observed and complained about the cancellation of large orders in certain futures markets, or otherwise commented on perceived market disruption. *See, e.g.*, Email from Alex Gerko to Peter Barenthein (Oct. 5, 2011) (Ex. A); Email from Chris Roenbaugh to Brenda Tucker (Oct. 14, 2011) (Ex. B). None of these market participants was able to identify who was placing the orders at issue. *See, e.g.*, Ex. A ("[s]omebody" was placing "short lived" orders); Ex. B ("[s]omeone" was placing orders that were cancelled "[b]efore you can lift them").

Unless such market behavior can be directly linked to the trading activity of Mr. Coscia charged in the Indictment, it is plainly irrelevant, having no bearing on any issue in this case. The admission of such evidence would also present a substantial danger of unfair prejudice to Mr. Coscia, inviting the jury to speculate or assume that the trading activity of Mr. Coscia charged in the Indictment harmed other traders or disrupted markets without any basis for doing so. The Court should therefore require the Government to offer proof of a direct causal connection to the trading activity of Mr. Coscia that is charged in the Indictment before admitting any such evidence.

## III.     EVIDENCE RELATED TO EXTERNAL ECONOMIC AND MARKET EVENTS AND CONCERNS SHOULD BE EXCLUDED.

The Court should preclude the Government from offering at trial evidence of or making arguments relating to external economic and market events and concerns, including the 2008 financial crisis, the recession, the 2010 "flash crash," or general trepidations about "Wall Street" and high frequency trading. Such evidence is both irrelevant and unfairly prejudicial and should be excluded.

A.     **Evidence Of External Economic And Market Events And Concerns Is Not Relevant.**

External economic and market events are just that, external; they rarely have any bearing on individual liability in a civil or criminal case.  As a result, courts regularly exclude as irrelevant evidence relating to large-scale economic and market events, such as the financial crisis.  *See, e.g.*, *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, No. 08-cv-7508, 2013 WL 1155420, at *3 (S.D.N.Y. Mar. 20, 2013) (excluding as irrelevant evidence of certain rating processes "insofar as it would be introduced for the purpose of implicating defendants in the financial crisis more generally"); *Island Intellectual Prop. LLC* v. *Deutsche Bank AG*, No. 09-cv-2675, 2012 WL 526722, at *3 (S.D.N.Y. Feb. 14, 2012) (excluding as irrelevant "abstract discussion of the financial crisis" where "claims relate[d] to financial products"); *Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Ams.*, No. 04-cv-10014, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (excluding "statements that do not bear on the issues being tried," including "statements linking the Bondholders, or hedge funds in general, to the financial crisis").

Mr. Coscia is not on trial for the financial crisis, the recession, the flash crash, or any other external economic or market event.  Nor is he charged with general concerns relating to Wall Street or high frequency trading.  Evidence or argument as to these issues obviously has no bearing on the charges in the Indictment.  It does not "advance the inquiry" even minimally. *Thompson* v. *City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006) (citation omitted).  Such evidence should therefore be excluded as irrelevant.

B.     **Even If Relevant, Evidence Of External Economic And Market Events And Concerns Would Be Unfairly Prejudicial.**

Evidence or argument as to external economic and market events may also play to jury members' anger, frustration, and fear, not their rational consideration of the charges at issue.  As courts have recognized, "[t]he financial crisis has deeply affected this country, and

-7-

efforts to connect [litigants] to that crisis may cause the jury to view them unfavorably" on an improper basis. *Island Intellectual Prop. LLC*, 2012 WL 526722, at *3. So too for other large-scale economic and market events. Courts have thus excluded evidence as to such events because its probative value is significantly outweighed by the danger of unfair prejudice. *See, e.g.*, *Abu Dhabi Commercial Bank*, 2013 WL 1155420, at *3; *Island Intellectual Prop. LLC*, 2012 WL 526722, at *3.

Evidence and argument relating to external economic and market events and concerns should be excluded here for this reason as well. Litigants "are not permitted to argue to the fact finder's potential economic sympathies or prejudices," and introducing evidence at trial as to the financial crisis, recession, and flash crash would do just that. *Kinsey* v. *Cendant Corp.*, 588 F. Supp. 2d 516, 518-19 (S.D.N.Y. 2008). Similarly, inflammatory language about the malaises of Wall Street and high frequency trading would appeal to jury members' potential anxiety about larger economic concerns, improperly diverting their attention from the charges against Mr. Coscia. Because of the substantial danger of unfair prejudice to Mr. Coscia, the Court should exclude evidence and argument of this sort.

## IV. EVIDENCE RELATED TO MR. COSCIA'S ECONOMIC CIRCUMSTANCES SHOULD BE EXCLUDED.

The Court should preclude as irrelevant and unfairly prejudicial evidence or argument relating to Mr. Coscia's economic circumstances, including his annual earnings, net worth, real estate holdings, bank accounts, and other assets.

### A. Evidence Of Mr. Coscia's Economic Circumstances Is Not Relevant.

Evidence of a defendant's financial circumstances is often offered to try to "equate wealth with wrongdoing and to appeal to the potential bias of not-so-wealthy jurors"—an "improper" strategy with "no place in a court room." *United States* v. *Stahl*, 616 F.2d 30, 31, 33 (2d Cir. 1980); *see also, e.g.*, *United States* v. *Jackson-Randolph*, 282 F.3d 369, 377 (6th Cir. 2002) ("[I]t is illogical and improper to equate financial success and affluence

-8-

with greed and corruption."). Accordingly, courts in the Seventh Circuit regularly exclude as irrelevant evidence of economic circumstances. *See, e.g.*, *Van Bumble* v. *Wal-Mart Stores, Inc.*, 407 F.3d 823, 826 (7th Cir. 2005); *United States* v. *Fuesting*, 845 F.2d 664, 673 (7th Cir. 1988); *Wielgus* v. *Ryobi Techs., Inc.*, No. 08-cv-1597, 2012 WL 1853090, at *6 (N.D. Ill. May 21, 2012).

Evidence and argument relating to Mr. Coscia's economic circumstances—his earnings, net worth, assets, and the like—has no bearing on the charges against him. While the Government may properly offer evidence as to the profits obtained as a result of the trading alleged in the Indictment, Mr. Coscia's economic circumstances are not otherwise relevant to proving any element of the charges in the Indictment. Mr. Coscia's economic situation has no connection to the Government's spoofing and commodities fraud charges. The Government does not allege, for example, that Mr. Coscia used his assets to fund his alleged illegal trading and fraudulent scheme, *cf., e.g.*, *United States ex rel. Tirado* v. *Bombard*, 423 F. Supp. 1245, 1248 (S.D.N.Y. 1976) (testimony regarding cash possessed by defendant admissible "for [the] limited purpose" of showing that he had financial ability to possess 13 ounces of cocaine), or that he accumulated those assets through the alleged illegal trading and fraudulent scheme, *cf., e.g.*, *United States* v. *Whiting*, 471 F.3d 792, 801 (7th Cir. 2006); *Jackson-Randolph*, 282 F.3d at 377. Accordingly, such evidence is irrelevant.

**B.     Even If Relevant, Evidence Of Mr. Coscia's Economic Circumstances Would Be Unfairly Prejudicial.**

Even where wealth evidence clears the relevance hurdle, it poses a significant danger of "play[ing] into a bias against people of wealth." *United States* v. *Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003). Courts routinely acknowledge that jurors may harbor prejudices toward affluent individuals and that evidence of financial status may unfairly inflame those prejudices. *See, e.g.*, *United States* v. *Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011) ("Use of a defendant's wealth to appeal to class bias can be 'highly improper' and can

-9-

deprive that defendant of a fair trial.") (quoting *United States* v. *Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940)); *United States* v. *Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (recognizing that "evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations"); *Cassese*, 290 F. Supp. 2d at 457 (granting new trial where Government's theory "enabled the introduction of highly prejudicial and inflammatory evidence and arguments in front of the jury regarding [the defendant's] wealth, salary, and stock holdings"). Courts in the Seventh Circuit have thus excluded evidence of financial status to protect defendants from unfair jury prejudice. *See, e.g.*, *Van Bumble*, 407 F.3d at 826; *Wielgus*, 2012 WL 1853090, at *6; *Pucci* v. *Litwin*, No. 88-cv-10923, 1993 WL 405448, at *1 (N.D. Ill. Oct. 4, 1993).

Evidence and argument related to Mr. Coscia's economic circumstances should be excluded for the same reason. Introducing evidence of Mr. Coscia's earnings, net worth, or assets would present a substantial risk of arousing jurors' biases towards wealthy individuals and thereby impermissibly "lur[ing] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief* v. *United States*, 519 U.S. 172, 180 (1997). Because of the significant danger of unfair prejudice towards Mr. Coscia, the Court should exclude evidence and argument as to his economic circumstances.

## V. REFERENCES TO "MANIPULATION" SHOULD BE EXCLUDED.

The Court should preclude the Government and any Government witnesses from referring at trial to "manipulation," including using the phrases "market manipulation," "price manipulation," and "manipulative conduct." Materials produced in discovery suggest, for example, that the Government may offer evidence from market participants who characterized the cancellation of large futures orders in such terms. *See, e.g.*, FBI, Anand Twells Interview Report 2 (July 24, 2015) (Ex. C) (characterizing repeat "deliberate and rapid cancellation of large orders" as "manipulative"); FBI, Jennifer Shaw Interview Report 1-2

(Sept. 9, 2015) (Ex. D) (characterizing large "short-lived orders" as "intend[ing] to manipulate the market"). References to "manipulation" are irrelevant and unfairly prejudicial and should be excluded.

### A. References To "Manipulation" Are Not Relevant.

Manipulation is a legal term that defines a precise kind of unlawful conduct that "is specifically forbidden" by the Commodity Exchange Act (the "CEA"). *Strobl* v. *New York Mercantile Exchange*, 768 F.2d 22, 27 (2d Cir. 1985). The CEA makes it a felony "to manipulate or attempt to manipulate the price of any commodity." 7 U.S.C. § 13(a)(2). "[T]he offense of price manipulation . . . , broadly stated, is an intentional exaction of a price determined by forces other than supply and demand." *Frey* v. *CFTC*, 931 F.2d 1171, 1175 (7th Cir. 1991). It requires proof that: "(1) [the defendant] possessed an ability to influence market prices; (2) an artificial price existed; (3) [the defendant] caused the artificial price; and (4) [the defendant] specifically intended to cause the artificial price." *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013) (citation omitted).

The CEA also prohibits manipulation by fraud. Under the CEA, it is unlawful "to use or employ," in the commodities context, "any manipulative or deceptive device or contrivance, in contravention of" CFTC rules. 7 U.S.C. § 9(1); *see also* 7 U.S.C. § 13(a)(5) (making it a felony to wilfully violate 7 U.S.C. § 9(1)). The CFTC has implemented this provision by prohibiting "fraud and fraud-based manipulations" by any person acting intentionally or recklessly in connection with a commodity. 76 Fed. Reg. 41,398, 41,400 (2011).

The term "manipulation" has no place in this case. The Government chose not to charge Mr. Coscia with any commodities manipulation offense. And the Government will not—and here could not—offer evidence to meet the heavy burden of proving manipulation. Nor is there significant overlap in elements between commodities manipulation offenses and

-11-

the offenses Mr. Coscia is actually charged with. Indeed, the CFTC has specifically warned against conflating the two. As the Commission has explained, the anti-spoofing statute is a "distinct statutory provision[] from the anti-manipulation provisions" of the CEA; the former does not have "any manipulative intent requirement" and importing such a requirement "is contrary to the statutory language." 78 Fed. Reg. 31,890, 31,892 (2013). Because this case does not involve manipulation, the Court should preclude the Government and any Government witnesses from referring to it.

> **B.    Even If Relevant, References To "Manipulation" Would Be Unfairly Prejudicial.**

Even if perceptions or characterizations of Mr. Coscia's trading as "manipulative" were somehow germane, they present a significant danger of unfair prejudice to Mr. Coscia. "Manipulation" is a loaded term; it connotes deception, exploitation, and other abusive tactics. Courts regularly preclude litigants from using such "pejorative terms when [the] categorizations [a]re inflammatory and unnecessary to prove a claim." *Aristocrat Leisure Ltd.*, 2009 WL 3111766, at *7 (precluding party "from making inflammatory remarks," such as using the term "tax haven"); *see also, e.g.*, *Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 192-93 (S.D.N.Y. 2008) (precluding party from referring to "securities fraud," "insider trading," "inside information," and "market manipulation" where "the only apparent reason for such trial strategy would be to show the jury that defendants are bad people") (internal quotation marks omitted).

References to "manipulation" might encourage an emotional reaction from the jury and would unduly suggest that the jury should associate Mr. Coscia with all of the term's derogatory connotations. To permit this to occur would allow the Government the improper benefits of using this nefarious term, while avoiding the heavy burden of proving the elements of manipulation. The Court should thus exclude references to "manipulation," including

"market manipulation," "price manipulation," and "manipulative conduct," as unfairly prejudicial to Mr. Coscia.

## VI.    LAY WITNESS CHARACTERIZATIONS OF MR. COSCIA'S TRADING ACTIVITY AS "SPOOFING" SHOULD BE EXCLUDED.

The Court should preclude any lay Government witnesses from characterizing Mr. Coscia's trading activity as "spoofing."  Materials produced in discovery suggest that the Government may offer evidence from market participants who characterized trading activity that they observed in the futures markets as "spoofing."  *See, e.g.*, Ex. D, at 1 ("[T]his marked the first occasion in which SHAW observed *spoofing* in the commodities markets.") (emphasis added); Ex. C, at 3 ("It is possible that the CITADEL algorithms were *spoofed* in the trading shown on sheet B, although TWELLS could not be certain due to the many factors examined by these algorithms.") (emphasis added).  Assuming the Government establishes that this trading activity is attributable to Mr. Coscia, *see supra* pp. 5-6, such characterizations are still both unhelpful to the jury and utterly speculative.

Under Federal Rule of Evidence 701, opinion testimony by a lay witness must be "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(b).  A lay witness's opinion that "the facts in a case meet the elements of the charged crime will likely constitute unhelpful testimony."  *United States* v. *Locke*, 643 F.3d 235, 241 (7th Cir. 2011).  As the Seventh Circuit has explained,

> a lay witness's purpose is to inform the jury what is in the evidence, not to tell it what inferences to draw from that evidence.  Once the evidence is presented, the jury is capable of examining it and determining whether it supports a conviction; it does not need lay testimony to assist in making that determination.

*United States* v. *Noel*, 581 F.3d 490, 496 (7th Cir. 2009) (citation omitted); *see also, e.g.*, *United States* v. *Espino*, 32 F.3d 253, 257 (7th Cir. 1994) (holding that district court erred under Rule 701 in admitting lay witness's "conclusion regarding the legal implications of his

conduct"); *United States* v. *Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) (affirming district court's exclusion under Rule 701 of lay witness "cross-examination as to the legal implications of what occurred").

Rule 701 also requires that lay witness opinion testimony be "rationally based on the witness's perception." Fed. R. Evid. 701(a). This is "the familiar requirement of first-hand knowledge or observation." Fed. R. Evid. 701 advisory committee's note; *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). "[M]ere speculation" is not enough. *Stagman* v. *Ryan*, 176 F.3d 986, 996 (7th Cir. 1999); *see also, e.g.*, *Visser* v. *Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) ("[O]pinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.").

Lay Government witness characterizations of Mr. Coscia's trading activity as "spoofing" should be excluded under Rule 701 because they are unhelpful to the jury. The jury will have what it needs to determine whether the Government has met its burden of proof once it has heard the evidence and been instructed on the law. The Government's lay witnesses need not "tell[] the jury what result to reach." *Locke*, 643 F.3d at 241. Such testimony, moreover, may invite confusion and error as the Government's lay witnesses are not experts on the law and may base their characterizations on a misunderstanding of what it criminalizes. *See, e.g.*, *Baskes*, 649 F.2d at 478 ("The witness, unfamiliar with the contours of the criminal law, may feel that the legal standard is either higher or lower than it really is."). This is especially the case here where there was no common understanding in the futures industry as to what was and what was not "spoofing" at the time market participants allegedly observed the trading activity at issue. *See* Def.'s Mot. to Dismiss Mem. 7-8 (quoting CFTC roundtable participants, *e.g.*,

Gary Dewaal, Newedge USA LLC (one of the world's largest futures brokerage firms): "I'm not sure [i]f the definition of spoofing can be agreed upon by the ten people around this table"; Gregory Mocek, former CFTC Director of Enforcement: "I'm not quite sure I know what spoofing is").

Lay Government witness characterizations of Mr. Coscia's trading activity as "spoofing" should also be excluded under Rule 701 because they are purely speculative. "Spoofing" is a legal term that rests on a determination of a market participant's subjective intent at the time an order is entered. Market participants, however, have no contact with or personal knowledge about their counterparties. The only information they receive in the regular course of trading about any given order is the number of futures contracts a counterparty is willing to buy or sell and at what price. This provides no first-hand basis for opining about a counterparty's intent in placing an order. Any opinion about Mr. Coscia's intent would therefore be plain conjecture and should be excluded.

**VII.   CME GROUP OR ICE WITNESS TESTIMONY RELATED TO COMPLAINTS ABOUT MR. COSCIA'S TRADING ACTIVITY SHOULD BE EXCLUDED.**

Materials produced in discovery suggest that the Government may offer evidence from CME Group or ICE Futures Europe witnesses that their exchanges received complaints from market participants about trading activity they observed. *See, e.g.*, FBI, John Philip Redman Interview Report 1-2 (Sept. 4, 2015) (Ex. E) (ICE "received several complaints from its market participants who alleged that one or more other market participants were spoofing"); FBI, Ryan Cobb Interview Report 1 (Sept. 16, 2015) (Ex. F) (CME Group investigation of Mr. Coscia "was initiated by a complaint from a trader"). Even assuming the Government establishes that these complaints related to trading activity attributable to Mr. Coscia, *see supra* pp. 5-6, such evidence is inadmissible hearsay, irrelevant, and/or unfairly prejudicial.

-15-

Market participants' complaints to the CME Group or ICE about Mr. Coscia's trading activity are statements "not ma[de] while testifying at the current trial." Fed. R. Evid. 801(c)(1). If the Government intends to offer them for "the truth of the matter asserted," *i.e.*, that the market participants actually observed certain market activity, then they are rank hearsay. Fed. R. Evid. 801(c)(2). Neither the business records exception nor any other exception to the hearsay rule applies. *See, e.g.*, *United States* v. *Santos*, 201 F.3d 953, 963 (7th Cir. 2000) (district court's admission of complaints to city ethics board under business records exception was "clearly incorrect" because exception "is inapplicable to information received rather than prepared by the business").

If the Government intends to offer these out-of-court statements for any other purpose, then they are irrelevant. That market participants complained about Mr. Coscia's trading activity is not probative of any issue in this case; it is of no help to the jury's analysis of the Government's spoofing and commodities fraud charges. Nor is such evidence necessary "background" to explain any subsequent investigations by the exchanges of Mr. Coscia's trading activity. As noted, the exchanges' investigations are not relevant to any disputed issue in this case. *See supra* p. 5.

CME Group or ICE witness testimony about such complaints also poses a significant danger of unfair prejudice to Mr. Coscia. It encourages the jury to conclude that his trading activity was illegal based on how other market participants perceived it instead of on proof by the Government of the elements of the charged offenses. The Court should thus exclude CME Group or ICE witness testimony about market participant complaints related to Mr. Coscia's trading activity.

## VIII.  EVIDENCE RELATING TO TRADING BY MR. COSCIA UNRELATED TO AND AFTER THAT CHARGED IN THE INDICTMENT SHOULD BE EXCLUDED.

The Government's exhibit list includes an email sent by Jeremiah Park—a programmer who worked for Mr. Coscia—to Mr. Coscia on November 22, 2011, concerning an unrelated algorithmic trading program.  Govt.'s Prelim. Ex. List 2 (Sept. 26, 2015) (Ex. G); Email from Jeremiah Park to Michael Coscia, et al. (Nov. 22, 2011) (Ex. H).  The Court should preclude the Government from offering this email into evidence or making any arguments related to it.

The November 22, 2011 email has nothing to do with the charged offenses.  The Indictment is based on Mr. Coscia's design and operation between August and October 2011 of two high frequency trading programs: "Flash Trader" and "Quote Trader."  Indictment ¶¶ 2-12. The email, sent after the period at issue in the Indictment, relates to "Ratio Trader," a different high frequency trading program with a different design and operation.  Ex. H.  The Indictment does not charge anything with respect to this program.  Consequently, this evidence is plainly not relevant.  *See, e.g.*, *United States* v. *Boone*, 628 F.3d 927, 935 (7th Cir. 2010) ("[T]he definition of the scheme itself is a limiting principle, in that only evidence of the same scheme as opposed to a related or distinct scheme, is admissible.").

To the extent the email is some sort of "other act" evidence, the Government has notified Mr. Coscia that it does not intend to offer any evidence pursuant to Federal Rule of Evidence 404(b).  Email from Renato Mariotti to Steven Peikin, et al. (Sept. 26, 2015) (Ex. I). Accordingly, this evidence should be excluded.

## IX.  CERTAIN EVIDENCE IN MR. COSCIA'S CFTC BACKGROUND QUESTIONNAIRE SHOULD BE EXCLUDED.

The Government has indicated that it will offer at trial a background questionnaire completed by Mr. Coscia on April 24, 2013, in connection with his testimony to the CFTC.  Ex. G, at 1; Michael Coscia CFTC Background Questionnaire (Apr. 24, 2013) (Ex.

-17-

J).  The Court should preclude the Government from offering, or making arguments related to, three categories of evidence in the questionnaire: (1) investigations resolved by Mr. Coscia's settlements with the FCA, CME Group, and CFTC; (2) Mr. Coscia's prior minor regulatory infractions; and (3) Mr. Coscia's sensitive personal information.

In response to questions 18, 19, and 20 of the CFTC background questionnaire on prior regulatory testimony, questioning, and actions, Mr. Coscia identified the FCA, CME Group, and CFTC investigations of the same trading conduct alleged in the Indictment. Ex. J, at 6-7.  For the reasons set forth above, evidence of these investigations should not be admitted. *See supra* p. 5.

In response to question 20 of the questionnaire, Mr. Coscia also identified three minor regulatory infractions imposed by exchanges 15 or more years ago: (1) a floor recordkeeping infraction from 2000 that resulted in a $250 fine; (2) a floor recordkeeping infraction from 1996 resulting in a $250 fine; and (3) a general conduct infraction from 1990 resulting in a $1,000 fine. Ex. J, at 7, 12-13.  Because the Government has not provided timely Rule 404(b) notice for these regulatory infractions, any evidence related to them should be excluded on that basis alone.

Nor would there be any basis for admitting this evidence even if the Government had provided the requisite notice.  Under Rule 404(b), this other-act evidence is not admissible to prove that Mr. Coscia "has a certain character and acted in accordance with that character on the occasion charged" here. *United States* v. *Gomez*, 763 F.3d 845, 860 (7th Cir. 2014) (en banc).  Nor is it admissible for any non-propensity purpose.  The Government cannot "establish that the other act[s] [are] relevant to a specific purpose other than [Mr. Coscia's] character or propensity to behave in a certain way." *Id.*  The three minor regulatory infractions are different in character and remote in time from the charged offenses and—in fact—were all based on the conduct of a clerk who worked for Mr. Coscia, not Mr. Coscia

-18-

himself.  They are not germane to any non-propensity purpose, such as establishing Mr. Coscia's motive, intent, or opportunity.  The only reason the Government could seek to offer these matters into evidence is to draw a forbidden propensity inference—to show some character of noncompliance with exchange rules.  The Court should thus exclude evidence in the CFTC background questionnaire of Mr. Coscia's three minor regulatory infractions as barred by Rule 404(b).

Even if such evidence were somehow relevant to establishing a non-propensity purpose, its probative value is significantly outweighed by the risk of unfair prejudice to Mr. Coscia.  Rule 403 "appl[ies] with full force" even where other-act evidence is pertinent to a Rule 404(b) permissible purpose.  *United States* v. *Miller*, 673 F.3d 688, 696 (7th Cir. 2012).  Indeed, "[o]ther-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference." *Gomez*, 763 F.3d at 857.  Here, admission of evidence as to Mr. Coscia's three minor regulatory infractions would encourage the jury to determine the case based on those distant and unrelated infractions instead of the Government's proof on the offenses charged in the Indictment.  The Court should thus exclude such evidence as unfairly prejudicial.[3]

Finally, the CFTC background questionnaire contains sensitive personal information, including Mr. Coscia's social security number, bank and securities account numbers, telephone and fax numbers, and home address.  Ex. J, at 1, 2, 9, 10.  Such information is plainly of no relevance in this case and should be excluded to protect its security and Mr. Coscia's privacy.  *See, e.g.*, *Gage* v. *Metro. Water Reclamation Dist. of Greater Chicago*, 365 F. Supp. 2d 919, 935 (N.D. Ill. 2005); *Tan* v. *City of San Francisco*, No. 08-cv-1564, 2010 WL 726985, at *6 (N.D. Cal. Feb. 26, 2010); *cf.* Fed. R. Crim. P. 49.1.

---

[3]  Because the regulatory infractions are unrelated to Mr. Coscia's character for truthfulness, Federal Rule of Evidence 608(b) has no role.

-19-

**CONCLUSION**

For the foregoing reasons, Mr. Coscia's Omnibus Motion In Limine should be granted.

Respectfully submitted,

/s/ Steven R. Peikin
Steven R. Peikin
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Of Counsel*:

Kenneth M. Raisler
Karen Patton Seymour
Julia A. Malkina

*Attorneys for Defendant Michael Coscia*

October 5, 2015

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 5, 2015, the foregoing was filed electronically with the

Clerk of Court to be served by operation of the Court's electronic filing system upon all attorneys

of record.

Renato Mariotti
Renato.mariotti@usdoj.gov

Sunil R. Harjani
Sunil.harjani@usdoj.gov

/s/ Steven R. Peikin
  Steven R. Peikin