**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**MICHAEL COSCIA,**<br><br>　　　　　Defendant. | **Case No. 14 CR 551**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Michael Coscia's ("Coscia") Motion for Judgment of Acquittal and for a New Trial [ECF No. 96]. For the reasons stated here, the Court denies the Motion.

### I.  BACKGROUND

The Court described the material facts of this case in its prior opinion denying Coscia's Motion to Dismiss the Government's indictment. *See, United States v. Coscia,* 100 F.Supp.3d 653, 655 (N.D. Ill. 2015). The following is a brief review. Coscia was the principal of a futures trading firm. In August 2011, he implemented a high-frequency trading program that essentially enabled him to manipulate the commodities markets. The computer program would place large orders that were programmed to cancel before execution, with the purpose of moving the market in a particular direction such that Coscia could reap benefits through small orders placed on the other side.

After discovering the scheme, the Government charged Coscia with six counts of "spoofing" under 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2), and six counts of commodities fraud under 18 U.S.C. § 1348. The case went to trial. A jury found Coscia guilty on all counts. He now challenges the sufficiency of the evidence for the verdict and claims the Court made numerous errors that gravely undermined the integrity of the trial. Accordingly, he renews his Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29(c) and requests a new trial pursuant to Rule 33(a).

## II.  LEGAL STANDARD

The Court grants a motion for judgment of acquittal when the evidence is insufficient to sustain a conviction. FED. R. CRIM. P. 29(a). The Court views the evidence in the light most favorable to the Government and "will overturn [the] guilty verdict only if the record contains no evidence, regardless of how it is weighed, from which the jury could have concluded beyond a reasonable doubt that [the defendant] is guilty." *United States v. Moses,* 513 F.3d 727, 733 (7th Cir. 2008) (internal quotations and citations omitted).

The Court may grant a motion for a new trial if the interest of justice so requires. FED. R. CRIM. P. 32(a). In considering the motion, the focus is on "whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses." *United States v. Washington,* 184 F.3d 653, 657 (7th Cir. 1999). Still, the Court should grant such motions "only [in] the

most extreme cases." *United States v. Linwood,* 142 F.3d 418, 422 (7th Cir. 1998) (internal quotations and citations omitted).

### III. ANALYSIS

#### A. Commodities Fraud

Coscia first challenges the jury's verdict that he committed commodities fraud. The relevant statute makes it a crime to "defraud any person in connection with any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered [under certain provisions of the Exchange Act]." 18 U.S.C. § 1348. According to Coscia, the Government needed to show that his actual orders were false or deceptive, but instead the Government sought to prove that he committed fraud merely by inducing other market participants to trade with him. This "pure inducement" theory, says Coscia, ducked the statutory requirements for fraud.

Coscia mischaracterizes the Government's theory of the case; this Court has addressed the issue once already. *See, Coscia,* 100 F.Supp.3d at 660-61. As the Court noted then, the Second Circuit has held that "false representations or material omissions are not required for a conviction under § 1348(1)" as long as there is fraudulent intent, a scheme or artifice to defraud, and a nexus with a security. *United States v. Mahaffy,* 693 F.3d 113, 125 (2d Cir. 2012) (citing *United States v. Motz,* 652 F.Supp.2d 284, 294 (E.D.N.Y. 2009)). In the indictment (*see,* Indictment ¶¶ 3, 8, 11) and

throughout the trial, the Government alleged that Coscia engaged in a scheme to defraud by intentionally misleading market participants about price and volume information in the commodities markets through sham quote orders. That theory fits the requirements of the statute.

Whether the proof was sufficient is another matter, and Coscia contends the Government offered no evidence of any actual deception. Coscia's primary argument in this regard is that the orders he placed were not fraudulent, but rather real orders that stayed on the market for 100 to 450 milliseconds (a long time, he claims, by high-frequency trading standards). Some of the large orders, he points out, actually traded. This argument ignores the substantial evidence suggesting that Coscia never intended to fill large orders and thus sought to manipulate the market for his own financial gain.

At trial, Coscia's computer programmer testified that his trading program placed large "quote orders" designed to "stimulate the market," and the program attempted to cancel the large orders as soon as they started to fill. (Trial Tr. 463-65.) In addition, a timer was set on the quote orders, and the programmer testified that the orders' short duration on the market was intended to reduce the risk that they would be filled. (Trial Tr. 469.) The Government also contrasted Coscia's trading activity with that of other high frequency traders. It introduced evidence, for example, suggesting that Coscia placed many more large quote orders than other traders, and then cancelled them at an unusually high rate (on one exchange at

a rate of 99%).  (Trial Tr. 299-300; Govt. Exs. ICE Summ. Charts 2-3.)  The fact that some of his large orders were partially filled may have been a result of an imperfect program, as the Government points out – at least, the jury was entitled to believe so.

In short, the Government introduced ample evidence from which a reasonable jury could find intent to deceive.  But even then, Coscia argues, the Government offered no proof that the deception related to a material matter.  That's hard to understand, based on the nature of the deception.  Drumming up interest on one side of the commodities market through the placement of large (though illusory) quote orders seems obviously material to other market participants' investment decisions.  "Wash trades" are an analogous practice that the Securities Exchange Act explicitly forbids.  *See,* 15 U.S.C. § 78i(a)(1).  This practice entails deceptively trading the same shares back and forth in an effort to create an artificially high price for the stock.  The Seventh Circuit has mentioned wash trading as an example of genuine market manipulation.  *See, Sullivan & Long, Inc. v. Scattered Corp.,* 47 F.3d 857, 864 (7th Cir. 1995) (contrasting the legitimate market practice of short selling with wash trading); *but see, Stoller v. CFTC,* 834 F.2d 262, 265-67 (2d Cir. 1987) (reversing CFTC enforcement action under a different statute where CFTC guidance on wash trades was overbroad and shifting).  The statutory prohibition against wash trading is silent on materiality, and that is no surprise:  the relevant deception in a

wash trade necessarily conveys information about demand and price, which are quintessentially material to investors. The same was true of Coscia's deception.

That the deception was material is not only intuitive, it was supported by evidence at trial. Several witnesses testified that Coscia's large quote orders influenced their trading activity or had the potential to do so, based on the parameters of their own trading algorithms. (Trial Tr. 637, 644, 656, 696-698, 742, and 765.) In short, Coscia cannot claim fairly that the Government failed to prove the materiality of his deception. Because the Government offered sufficient proof of deception and materiality, the jury's guilty verdict on commodities fraud stands.

## B. Spoofing

The next challenge concerns the verdict against Coscia for "spoofing." The relevant statute prohibits "any trading, practice, or conduct [that] . . . is of the character of, or is commonly known to the trade as, 'spoofing' (bidding or offering with the intent to cancel the bid or offer before execution)." 7 U.S.C. § 6c(a)(5)(C). Coscia resurrects the argument, already rejected by this Court, that the statute is void for vagueness. *See, Coscia,* 100 F.Supp.3d at 656-59. The Court adopts the reasoning from its prior opinion on this topic and repeats only a few key points here. The question is whether the statute is unconstitutional as applied to Coscia's conduct, not as applied to the hypothetical conduct of other

commodities traders.  *See, United States v. Mazurie,* 419 U.S. 544, 550 (1975).  The Court is also mindful that it must interpret a statute in such a way to avoid declaring it unconstitutional, if reasonably possible. *See, Rust v. Sullivan,* 500 U.S. 173, 190-91 (1991) (citations omitted).

Coscia's primary argument for the statute's vagueness is that it encompasses much routine, innocuous conduct by commodities traders. The Court already rejected this notion as applied to Coscia, *see, Coscia,* 100 F.Supp.3d at 658-59, because his intent to cancel the orders before he executed them differentiated his conduct from other, legitimate practices such as fill-or-kill and partial-fill orders. Coscia now further argues that there is nothing "in the statutory text that would have provided [him] notice of [the] intent-to-immediately-cancel standard."  (Def.'s Br. at 15.)  Without fair notice that his conduct was criminal, his guilty verdict cannot stand.  In inquiring about notice, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier,* 520 U.S. 259, 267 (1997).

Coscia had fair notice.  It would be unreasonable to believe that Congress had intended to criminalize all orders that are eventually cancelled at any point, for any reason, under 7 U.S.C. § 6c(a)(5)(C).  The definition of spoofing must be read in conjunction with the companion statutory provision that actually

criminalizes the conduct: 13 U.S.C. § 13(a)(2) prohibits the manipulation or attempted manipulation of commodity prices generally, and prohibits knowing violation of the anti-spoofing rule. The purpose is clear: to prevent abusive trading practices that artificially distort the market. That, in turn, only occurs when there is intent to defraud by placing illusory offers (or put another way, by placing offers with the intent to cancel them before execution). Moreover, as the Court indicated in its previous discussion of wash trading, statutory prohibitions against specific forms of market manipulation are nothing new. *See, generally,* 15 U.S.C. § 78i.

Coscia also attacks the sufficiency of the evidence supporting the verdict for spoofing, arguing the Government failed to establish that he intended to cancel the orders in their entirety at the time he placed them with an intent to manipulate the market. But the Court has already described some of the relevant evidence that suggested intent to cancel under the commodities fraud count. For example, Coscia's computer program was designed to place large orders that would cancel automatically before being filled, for the purpose of manipulating the market, according to his programmer. Such evidence supports the guilty verdict on all counts.

### C. Challenge to Jury Instructions

Coscia challenges the jury instructions on two separate bases. "Jury instructions are sufficient if, taken together, they convey the

issues fairly and accurately." *United States v. Johnson,* 584 F.3d 731, 739 (7th Cir. 2009) (internal quotations and citations omitted). First, Coscia contends that the Court erred in refusing to adopt his proposed instruction on materiality for the commodities fraud charge. His proposed instruction reads:

> It is not sufficient for the Government to prove that Mr. Coscia intended that his large-volume orders would induce others to react to allegedly deceptive market information and enter into futures transactions with him. The Government must also prove that Mr. Coscia's allegedly deceptive market information was intended to mislead others as to the quality or price of the futures transactions at issue, or otherwise to the nature of the bargain at issue. Stated differently, to prove that Mr. Coscia engaged in a scheme to defraud, he must have acted with intent to deprive others with whom he traded of the benefit of the bargain they struck.

(Suppl. to Prop. Jury Instr., ECF No. 74.) This was an excessively wordy, potentially confusing formulation of what the Government had to prove.

To review, on the commodities fraud charge, the Government had to establish Coscia's fraudulent intent, a scheme or artifice to defraud, and a nexus with a security. *See, Mahaffy,* 693 F.3d at 125. The Court adopted a much more concise instruction than Coscia's proposal. (Jury Instr. No. 19.) The Court's instruction required the jury to find separately that there was a scheme to defraud and that Coscia acted with the intent to defraud; the instructions subsequently indicated that the scheme must be material, "which means it is capable of influencing the decision of the person to whom it is

addressed." *Id.* This definition was borrowed directly from the Seventh Circuit's pattern instructions. *See, Pattern Criminal Jury Instructions of the Seventh Circuit* 399 (2012). The Court's instruction fairly and accurately captured all of the required elements of commodities fraud, and Coscia was not prejudiced by the exclusion of his proposed instruction.

The next challenge is to the instruction on the spoofing charge. Coscia argues that the Court should have adopted his proposed instruction regarding "conditional intent." According to him, the jury was not adequately apprised that if he intended to cancel orders only under some conditions, he was not guilty of spoofing. The instruction Coscia requested reads:

> It is not sufficient for the Government to prove . . . that [Coscia] intended to cancel the bid or offer under some, but not all, conditions. Put another way, if you find that Mr. Coscia intended to execute his bid or offer under some, but not all circumstances, then the Government has failed to prove that he had an intent to cancel the bid or offer before execution, and this element has not been satisfied.

(Prop. Jury Instr., ECF No. 59.)

The instruction the Court ultimately adopted reads, in relevant part:

> "Spoofing" is defined as bidding or offering with the intent to cancel the bid or offer before execution. To find this element satisfied, you must find that the government has proven beyond a reasonable doubt that, at the time Mr. Coscia entered the bid or offer specified in the Count that you are considering, he intended to cancel the entire bid or offer before it was executed, and that he did not place the bid or offer as part of a legitimate, good-faith attempt to execute at least part of that bid or offer.

(Jury Instr. 24.)

The Court's instruction emphasized that the Government had to prove Coscia entered the relevant bid or offer with the intent to cancel it entirely before it was executed. The instruction therefore did not foreclose any defense by Coscia. He remained free to argue that his trading program only cancelled orders under certain conditions. And if that were true, it would necessarily mean that he did not have a preexisting intention "to cancel the entire bid or offer before it was executed." (Jury Instr. 24.) The instruction allowed the jury to consider fully his "conditional intent" defense, and they rejected it. In short, the Court's instruction on the spoofing charge fairly and accurately captured the required elements.

### D. False and Prejudicial Testimony

Coscia challenges various aspects of testimony given by the Government's witnesses, claiming the testimony undermined his right to a fair trial. He first claims that two Government witnesses – Bessembinder and Dermenchyan – inappropriately testified regarding his intent in violation of Federal Rules of Evidence 704 and 701. Rule 704(b) prohibits expert witnesses from opining on a criminal defendant's mental state that constitutes an element of the crime. Fed. R. Evid. 704(b). Rule 701(a) allows non-experts to provide an opinion as long as it is rationally based on the witness's perception, helpful to understanding the evidence, and not based on scientific or technical knowledge. Fed. R. Evid. 701(a).

Bessembinder served as an expert witness for the Government. Coscia claims that Bessembinder's testimony crossed the line into testimony about Coscia's mental state, but that is a stretch too far. The Government asked Bessembinder to explain Coscia's testimony regarding his trading patterns. (Trial Tr. 1389-90.) Bessembinder testified that "the only way that trading is generated in the electronic futures markets is through order submission. So if one is seeking to generate trading, seeking to generate a reaction, the only way one could do that is by inducing people to change their order submissions." (Trial Tr. 1390.) The Government then asked Bessembinder if he observed data in evidence consistent with that description. He responded:

> Well, in particular, the high fill rates on the small orders. They were not only very high relative to the fill rates on the large orders, they are actually remarkably high for fill rates for other high frequency traders, so the high fill rates on the small orders are certainly very much consistent with the idea that the reaction that was generated was to induce other traders to submit orders to trade against, interact with the small orders.

(Trial Tr. 1391.)
This testimony fell safely within Rule 704(b)'s limitations. Bessembinder opined on direct testimony from Coscia; he stated, as an expert witness, his belief that the data in evidence differentiated Coscia's trading patterns from that of other high-frequency traders. Coscia then immediately had the opportunity to cross-examine Bessembinder on this opinion. Bessembinder did not testify that

Coscia intended to deceive the market or intended to cancel orders; the testimony did not implicate intent as to any element of the crime charged.

Coscia next contends that Dermenchyan, a lay witness and a commodities trader, improperly testified to matters outside of his personal knowledge in violation of Rule 701(a). As Coscia concedes, lay witnesses may testify as to intent. *See, United States v. Locke*, 643 F.3d 235, 240 (7th Cir. 2011). Dermenchyan testified that, on a particular day, he noticed unusual trading patterns: "[A]fter noticing the behavior and doing a little more research, I was able to . . . figure out that essentially these large orders were placed with the – from my perspective and the conclusions I made at the time, with the intention of inducing other participants to trade." (Trial Tr. 652.) Dermenchyan continued to describe the patterns he observed, and stated again that the pattern "was very consistent behavior which led me to conclude at that time that those orders were placed with the intention of essentially moving the market down and then pushing the market back up." (Trial Tr. 653.)

Even if these statements related to Coscia's intent, they were within Dermenchyan's first-hand knowledge and so satisfied the requirements of Rule 701(a). Dermenchyan testified about his direct observations of the market on a particular day as a commodities trader. His testimony would have been pointless had he been barred from explaining his interpretation of the pattern. And Coscia had

the opportunity to challenge his interpretation on cross-examination. The statements did not undermine the fairness of the trial.

Coscia additionally claims that Dermenchyan and another lay witness, Redman, gave the sort of scientific or technical opinion testimony proscribed by Rule 701(c). Both witnesses testified about market patterns they observed; these observations were based on their direct experience. Coscia objects to a few relatively brief passages in which the witnesses discuss supply and demand, and use the terms "buying pressure" and "selling pressure." (Trial Tr. 276, 278-79; 654, 682).

It is true that "testimony which goes beyond the observations that a normal person could make, and is based instead on the specialized knowledge obtained through experience in the field," must comply with Rule 702 as expert testimony. *United States v. Jones,* 739 F.3d 364, 369 (7th Cir. 2014). But that was not the sort of testimony offered here. Dermenchyan's and Redman's testimony contained rudimentary statements about supply and demand, concepts that are relatively easy to grasp. As traders, the witnesses had to speak about these concepts in order to describe their own observations about market activity at specific points in time. Because the statements were based on their personal knowledge and were not offered as opinions based on their years of expertise, the statements complied with Rule 701. *See, United States v. Cheek*, 740 F.3d 440, 447-48 (7th Cir. 2014) (holding that when a law enforcement

officer testifies using technical terms but based on his personal knowledge of a relevant investigation, the officer testifies as a lay witness).

Dermenchyan and Redman also made statements that Coscia now contends were false. When a defendant demands a new trial based on alleged false testimony, the proper analysis asks whether:

> (a) the court is reasonably well satisfied that the testimony given by a material witness is false; (b) the jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false; and (c) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*United States v. Bender,* 539 F.3d 449, 456 (7th Cir. 2008) (internal brackets and citations omitted).

First, Coscia objects to Redman's statement that on a particular day, Coscia sustained a loss due to execution of his large buy orders. (Trial Tr. 303-04.) The loss that day, Coscia counters, resulted from execution of his small orders rather than the large ones. Second, Coscia takes issue with Dermenchyan's statement that he witnessed a trading pattern repeat 4,000 times in one day. (Trial Tr. 651.) This is wrong, Coscia claims, because on that day he entered only 1,836 orders in total.

The two challenged statements are slight compared to the amount of other evidence the Government offered at trial on these points. The Government introduced substantial evidence about Coscia's trading

- 15 -

activity, including a breakdown of his large and small orders, the rate at which they were filled or cancelled, and other data. (Govt. Exs. ICE Summ. Chart 1 and Summ. Charts as to Counts.) Moreover, as the Government points out, Coscia had the opportunity to discredit any material false statements during cross-examination of Dermenchyan and Redman. These relatively minor statements, assuming they were false, do not entitle him to a new trial. The jury likely would not have reached a different verdict in the absence of the statements, and Coscia has offered no convincing argument that he was unfairly surprised by the testimony.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion for Judgment of Acquittal and a New Trial [ECF No. 96] is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: April 6, 2016