# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> MICHAEL COSCIA, ) <br> ) | No. 14-CR-0551 <br><br> Honorable Harry D. Leinenweber <br><br><br> EVIDENTIARY HEARING AND <br> ORAL ARGUMENT REQUESTED |

## DEFENDANT MICHAEL COSCIA'S MOTION FOR A NEW TRIAL

Defendant Michael Coscia respectfully moves this Court to grant him a new trial pursuant to Federal Rule of Criminal Procedure 33 based on newly-discovered evidence. In support of this Motion, Mr. Coscia relies on the accompanying Memorandum of Law and states as follows:

1. Mr. Coscia was indicted on, and eventually convicted of, six counts of commodities fraud and six counts of spoofing related to trading activity that occurred on 17 Chicago Mercantile Exchange ("CME") markets and one Intercontinental Exchange ("ICE") market from August to October 2011.

2. Throughout Mr. Coscia's trial, the central premise of the government's case was that Mr. Coscia was the only person who traded the way he did—in the government's words, that he was "one of a kind"—and that his trading patterns placed Mr. Coscia so far outside the bounds of legitimate trading activity that it demonstrated Mr. Coscia's criminal intent to commit spoofing and commodities fraud.

3.  But two sets of newly-discovered evidence demonstrate that Mr. Coscia's trading was consistent with many hundreds of other market participants and market activity in general. This evidence includes:

    a.  **Trading data and admissions obtained from the CME and ICE**. Prior to trial, the government disclosed trading data for only a limited time period, a narrow set of futures contracts, and a small set of traders. After trial, the CME produced a complete record of all market participants' order and trading history covering the entire 10-week period at issue for all 17 CME markets in which Mr. Coscia traded. ICE also produced additional data to Mr. Coscia following trial but, even more important than the additional data, was ICE's post-trial admission that it had mislabeled a critical exhibit and miscalculated the data it provided. *In fact, far from being responsible for 96 percent of all order cancellations on the Brent Crude futures market—a statistic presented to the jury, relied upon by this Court in denying post-trial relief, and adopted by the Seventh Circuit in affirming Mr. Coscia's conviction—ICE and the government now admit that he was responsible for only a fraction of one percent of such cancellations.*

    b.  **Post-trial indictments of other traders**. The government's case rested on the premise—repeated unequivocally to the jury time and again in both the government's arguments and through the testimony of multiple witnesses (and later by government counsel to the Seventh Circuit)—that Mr. Coscia was "one of a kind" and the only trader engaged in the conduct alleged. In fact, while Mr. Coscia's trial was underway, the government was actively investigating almost a dozen other traders and later indicted them for engaging in substantially similar trading, in the same commodities, on the same markets, and during the same time periods as Mr. Coscia. The government cannot have it

both ways, securing a conviction against Mr. Coscia based on the specific representation that he was unique, then indicting almost a dozen others for the same conduct.

4. Based on this newly-disclosed evidence, a new trial should be granted for at least two reasons. ***First,*** the additional data and disclosures made by CME and ICE conclusively demonstrate that Mr. Coscia's trading activity was the same as hundreds of other traders. Specifically, this new evidence proves that three key points repeatedly advanced by the government regarding Mr. Coscia's purported outlier status are demonstrably and verifiably false:

   a. Mr. Coscia's cancellation rates for large orders were not out of the ordinary in comparison to other traders;

   b. The size of Mr. Coscia's orders compared to the size of trades he executed (his "order-to-trade size" ratio) was not out of the ordinary; and

   c. Like Mr. Coscia, there are many hundreds of market participants who placed both large and small orders and, also like Mr. Coscia, filled small orders at a substantially higher rate than they filled their large orders, directly contrary to the testimony of both CME and ICE witnesses.

5. ***Second***, the post-trial indictments refute the government's claims to this Court, the jury, and the Seventh Circuit that Mr. Coscia was unique or one-of-a-kind. In fact, many of the investigations leading to these other indictments were necessarily ongoing before Mr. Coscia ever went to trial. The government knew—or, at a bare minimum, should have known—that its representations to the jury were false.

6. In light of both sets of newly-discovered evidence, the government's evidence was insufficient to convict Mr. Coscia of spoofing and commodities fraud. Put more simply, had this evidence been presented to the jury, Mr. Coscia would have been acquitted.

7.        Mr. Coscia's conviction should be vacated and he should be granted a new trial pursuant to Federal Rule of Criminal Procedure 33.

WHEREFORE, Mr. Coscia requests that this Court grant this motion and:

1.        Vacate Mr. Coscia's conviction for six counts of spoofing and six counts of commodity fraud; and

2.        Grant Mr. Coscia a new trial.

Dated: January 10, 2019

/s/   *Leonid Feller*
Leonid Feller
Sunil Shenoi
Benjamin O'Connor
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
leonid.feller@kirkland.com
sunil.shenoi@kirkland.com
benjamin.oconnor@kirkland.com

*Attorneys for Defendant Michael Coscia*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2019, a true and correct copy of the foregoing document was served on counsel of record via the Court's CM/ECF System.

                                                */s/ Leonid Feller*
                                                Leonid Feller