**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**MICHAEL COSCIA,**<br><br>　　　　　Defendant. | No. 14 CR 551<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendant Michael Coscia has filed his second motion for a new trial (Dkt. No. 219). For the reasons stated here, the motion is denied.

### I.　BACKGROUND

The facts of this case have been extensively set forth in an opinion of this Court and in an opinion of the Court of Appeals for the Seventh Circuit. *See United States v. Coscia*, 177 F. Supp. 3d 1087 (N.D. Ill. 2016); *United States v. Coscia*, 866 F.3d 782 (7th Cir. 2017). Therefore, only a brief review is necessary. Coscia was the principal of a futures trading firm. In August of 2011, he implemented a high-frequency trading program which the government charges allowed him to manipulate the commodities market. His trading program involved the placement of three large orders of a commodity in an ascending or descending order of pricing, either above or below the market and, simultaneously, the

1

placement of a small order in the opposite direction, with the intent that the small order be filled and the larger orders would be cancelled. The purpose of the three larger orders is to move the market in a particular direction by fooling other traders into believing that the market is saturated with buy (or sell) orders and thus to cause the smaller orders to be executed above or below the then-current commodity price. Coscia's trading program also involved the immediate reenactment of the same trading activity in the opposite direction, all of which took place within one second or less.

The successful execution of this strategy allowed Coscia to reap substantial financial benefits over a several month period until his trading was stopped by the government. The government subsequently charged Coscia with six counts of Commodities Fraud in violation of 18 U.S.C. § 1348, and six counts of "spoofing" in violation of 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2). The case proceeded to trial and a jury found Coscia guilty on all counts. Subsequent to the entry of judgment, Coscia moved for judgment of Acquittal and for a New Trial. (Dkt. No. 96.) The Court denied the motion on April 6, 2016. *See Coscia*, 177 F. Supp. 3d 1087. Coscia has once again moved for a new trial based this time on "newly discovered evidence."

II. **STANDARD FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE**

In order to receive a new trial based on newly discovered evidence, a defendant "must demonstrate that the evidence: (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. Eads*, 729 F.3d 769, 780 (7th Cir. 2013).

### III. DISCUSSION

The first requirement is that a defendant must have exhibited due diligence in attempting to obtain the evidence he now contends is new. The evidence Coscia submitted with his motion tends to show that certain evidence submitted by the government in the form of charts prepared by Intercontinental Exchange ("ICE"), one of the exchanges Coscia was charged with manipulating, had some inaccuracies. In addition, Coscia notes that the government was actively prosecuting other traders for engaging in activities similar to that with which Coscia was charged. The purpose of this new evidence attempts to place in doubt the government's contention that Coscia's trading activity demonstrated that he was a trading outlier, i.e., that his trading did not conform to that of other traders.

The government responds by pointing out that prior to trial Coscia had all the evidence that the government possessed to demonstrate that Coscia was an outlier with respect to his trading

3

activity. It was not until after the trial concluded with a verdict against him that Coscia actively sought to discover evidence as to how his trading activities compared to the rest of the commodity traders trading on specific markets. In fact, in his opening brief on this motion, Coscia did not even claim or show how he sought to obtain pretrial the specific data that he now claims to be "newly discovered." The government contends Coscia's opening brief did not show or attempt to show how he sought this evidence prior to trial and by failing to so show has waived the due diligence prong of the newly discovered evidence test, which dooms his motion. Be that as it may, Coscia has a bigger problem: this evidence was not particularly relevant to the defense Coscia presented at trial, which did not involve his current contention that the statistical evidence of his trading activity did not make him an outlier.

Instead, the defense Coscia presented to the jury, including his arguments, his expert's testimony, and his own trial testimony, admitted the substance of his trading activity, i.e., the rapid placement of the three large orders, the simultaneous small order, the cancellation of the large orders upon the fulfillment of the small order. Coscia claimed that this was a legitimate trading strategy because each and every order he placed, whether large or small, was a legitimate order that was capable of being filled prior to its cancellation. Coscia further argued that many traders pursued trading strategies similar to his that likewise involved

4

trade cancellations as an integral part of their strategies. He did not deny that he had pursued a course of trading that was as described by the government and by the government witnesses. It would have been difficult for him to deny this trading strategy after his programmer, Jeremiah Park, testified that the program was designed to avoid large orders being filled and that the large orders ("quote orders") were "used to pump the market," i.e., make it move one way or the other.

Moreover, the most likely use of the so-called newly discovered evidence would be to impeach the government's witnesses. "Impeachment evidence cannot provide the basis for a new trial." *Kitchen v. United States*, 227 F.3d 1014, 1022 (7th Cir. 2000). Coscia argues that the newly discovered evidence casts grave doubt on the accuracy of the various charts that the government's ICE witness created and about which he testified. The major evidentiary matter discovered by Coscia since the trial was that ICE's order cancellation statistics that appeared on its charts were determined using a regulatory tool that provided ICE with "alerts" as to suspicious trading activity, rather than being based on the actual trading activity. Whether these alerts operate as an accurate proxy to numerical trading activity could have been discovered and explored on cross examination at the trial. It could also have been discovered prior to trial through discovery. The government witnesses and experts, particularly on cross

examination, made it very clear to the jury that there were many legitimate reasons why a trader might cancel a trade prior to its fulfillment, such as change in the market, "fill or kill" orders, and several other legitimate trading strategies that involved cancellations. The government also made it very clear to the jury that the cancellations that it was contending amounted to spoofing or commodity fraud were cancellations that were preordained, i.e., orders that were entered without any intention of being filled at the time they were made. In this vein the Court clearly instructed the jury that it could not convict unless it was convinced beyond a reasonable doubt that Coscia intended to cancel his large trades at the time he made them.

The balance of Coscia's argument for a new trial based on the ICE charts involves arguments as to what specific statistics proved or did not prove. Coscia argues in his brief that his cancellation rate compares favorably with other traders. However, these statistics compare all trade cancellations no matter the reason or the size, while the government's statistics involved comparing the cancellation of large trades following the execution of small trades which allotted 96% of these cancellations to Coscia.

In addition, Coscia argues that the government's statistical evidence is flawed because it omitted order modifications in comparing cancellations rates. However, Coscia's strategy involved cancellations only, not modifications of orders. It is hard to see

6

how introducing modifications into the case would have made a difference. Coscia certainly could have argued at trial that this and the other statistical arguments he now attempts to make were soft points in the government's case, but it is hard to see it making a difference in the ultimate outcome.

Thus, the case with the new statistical evidence at retrial would boil down to arguments on both sides that the other side is comparing apples to oranges, or that "there are lies, damned lies and statistics." While it may well be that these arguments would be legitimate cross examination techniques to be employed, nevertheless such statistic evidence in this case does not rise to the level where one can say that it would probably lead to an acquittal. Thus, Coscia is not entitled to a new trial on the basis of newly discovered statistical evidence.

Coscia's other major claim is that he discovered after his trial, based on indictments returned against defendants in subsequent criminal proceedings, that other traders may have been pursuing similar spoofing strategies. Any such evidence would hardly be relevant or material, which is a requirement to constitute newly discovered evidence. *United States v. Salem*, 578 F.3d 682, 686 (7th Cir. 2009). That others may have employed illegal trading strategies does not constitute a defense to a criminal indictment based on the employment of illegal trading strategies. Coscia again focuses on his contention that the

government excessively made the claim that his trading activities made him an outlier. The government did not say that no other trader ever employed Coscia's illegal strategy. It did claim that his high cancellation rate after the filling of his small orders did show that he was an outlier. It would be unusual, considering Coscia's financial success in pursuing his spoofing activities, that some other unscrupulous trader might be incentivized to do likewise. However, it is hard to see how the admission of such evidence would lead to a probable acquittal, one of the requirements of a new trial based on newly discovered evidence.

Coscia went to trial admitting what he was doing and arguing that what he was doing was a legitimate, legal trading strategy. He took the stand in his own defense and attempted to explain and justify his trading activities. He produced an expert who testified that his opinion Coscia's trading activities were legitimate. The government argued otherwise. It contended, among other things, that Cocia's order to trade ratios, especially order to trade ratios based on order size, were unique. This evidence plus the testimony of Jeremiah Park, completely justifies the jury's conclusion that Coscia was guilty of spoofing and commodity fraud, i.e., entering orders with intent to have them cancelled prior to their execution. *See Coscia*, 866 F.3d at 796.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for a new trial based on newly discovered evidence is denied.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

Dated: 5/15/19